UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LISA GRIMSHAW,

                                                  Plaintiff,

   v.                                                                                      8:06-CV-628
                                                                                                          (GJD)

COMMISSIONER OF SOCIAL SECURITY,

                                                Defendant.
_____

MARK A. SCHNEIDER, ESQ., for Plaintiff
DENNIS J. CANNING, Special Asst. U.S. Attorney for Defendant

GUSTAVE J. DI BIANCO, Magistrate Judge

## MEMORANDUM DECISION AND ORDER

This matter has been referred to me for all further proceedings, including the entry of judgment pursuant to 28 U.S.C. § 636(c), the consent of the parties, and the order of the Honorable Norman A. Mordue, Chief United States District Judge, dated April 17, 2009. (Dkt. No. 28).

## PROCEDURAL HISTORY

On May 5, 2003, plaintiff filed applications for Social Security Disability and Supplemental Security Income benefits. (Administrative Transcript ("T.") at 29-31, 41). Her claims were denied on July 1, 2003. (T. 15, 16-19, 130-35). After a hearing before Administrative Law Judge ("ALJ") J. Lawson Brown, the ALJ found that plaintiff was not disabled. (T. 10-14). Plaintiff filed civil action number 1:04-CV-1258 in this court, and pursuant to a Stipulation of Remand, the case was returned to the Social Security Administration for further proceedings. (T. 179-80).

On September 8, 2005, the Appeals Council remanded plaintiff's claim for a

new hearing with specific instructions. (T. 183-84). On March 9, 2006, ALJ Thomas P. Zolezzi conducted the remand hearing, and on May 9, 2006, found that plaintiff was not disabled. (T. 167-75).

## CONTENTIONS

The plaintiff makes the following claims:

(1) The ALJ failed to fully comply with the remand order of the Appeals Council. (Pl. Brief at 7-8).

(2) The ALJ violated the treating physician rule. (Pl. Brief at 9-13).

(3) The ALJ erred in finding that plaintiff had the residual functional capacity for light work. (Pl Brief at 13-20).

(4) The ALJ did not consider plaintiff's obesity in combination with her other impairments. (Pl. Brief at 20-22).

(5) The ALJ erred in assessing plaintiff's credibility. (Pl. Brief at 22-25).

The defendant argues that the Commissioner's determination is supported by substantial evidence and must be affirmed.

## FACTS

1.  **Plaintiff's Testimony**

    **A. 2004 Hearing**

    Plaintiff testified at each hearing. (T. 151-66 (2004), T. 246-82 (2006)). At the July 2004 hearing, plaintiff testified that she had various jobs since age 16, and recently had worked for approximately 8 years as a Nurse's Aid. (T. 153-54). Plaintiff injured herself at work during July 2002 and stopped working in October 2002. (T. 153). Plaintiff testified that she began physical therapy, but the physical

therapy made her pain worse. (T. 155). Plaintiff used prescription medications, including Hydrocodone, Flexeril, and Zoloft. According to plaintiff, these medications made her very sleepy. (T. 155-56). Plaintiff stated that she received steroid injections into her lower spine, but she still had pain in her lower back, left hip, leg, and ankle or knee. (T. 157). Occasionally, plaintiff experienced numbness, once or twice in a day. (T. 158).

Plaintiff stated that she was unable to do any of her prior activities, lost her balance when walking, and had difficulty standing more than a few minutes. (T. 157-60). According to plaintiff, she was unable to do many household chores, and received help from her children and boyfriend. (T. 160-63). The Administrative Record contains a disability report completed by plaintiff in May 2003, in which she claimed that she suffered extreme pain from her lower back impairment and saw her treating physician, Dr. Dispo, approximately every two months. (T. 42). According to plaintiff's written report, she specifically stated that she did not have any adverse side effects from either the Hydrocodone or the Zoloft. (T. 46).

In her request for the 2004 hearing, she stated that she had increased pain and decreased flexibility, but did *not* mention any side effects from the Hydrocodone or Zoloft. (T. 58). In a "Function Report," signed by plaintiff on May 28, 2003, she stated that she was unable to do any types of housework or outside activities, had difficulty sleeping and getting dressed, and rarely left her house because she had pain walking, sitting, and climbing stairs. (T. 60-70). Plaintiff stated that her lower back ached most of the time, and that she had stabbing pains in her left leg which had

recently become worse, requiring her to lay down to relieve the pain. (T. 69). In the May 28, 2003 form, plaintiff did state that the Hydrocodone she took three times per day made her drowsy. (T. 69).

### B. 2006 Remand Hearing

After the Federal Court and Appeals Council remands, ALJ Zolezzi held a supplemental hearing on March 9, 2006. (T. 246-82). Plaintiff's testimony in 2006 was similar to her 2004 testimony but was more detailed. Plaintiff stated that she had pain "just walking on level land" (T. 254); could not sit or stand very long (T. 254, 268); could only walk 200 feet (T. 268); and always had pain which got worse after standing for a short period of time. (T. 268). According to plaintiff, she spent alot of time each day in bed and could not do any usual household chores. (T. 269, 272). She spent most of her day reading and laying in bed. (T. 275). She was taking Hydrocodone for pain four times a day. (T. 279). Plaintiff was also taking the anti-depressant Zoloft and stated that she believed there were problems with her brain that "don't show [on a CT scan]". (T. 263).

### 2. Medical Evidence

The record contains a great deal of medical evidence from plaintiff's main treating physician, Dr. Honorio Dispo. Dr. Dispo treated plaintiff from January 2003 through May 2005. (T. 50-58, 223). Plaintiff was also treated by Dr. Maurice Racine. (T. 229-45). Plaintiff has had many medical tests including an MRI exam of her lumbar spine in 2003 and another in 2004 (T. 122, 224); a CAT scan of her back during 2002 (T. 93); a bone scan during January 2003 (T. 123); a CAT scan of her

brain during June 2005 (T. 231); nerve testing in March 2003 and February 2005 (T. 120, 223), and lumbar epidural steroid injections on two or three occasions.

The record contains many reports from Dr. Dispo from 2003, 2004, and 2005. Dr. Dispo's reports in 2003 record plaintiff's complaints about persistent low back pain which radiated down plaintiff's legs and, according to plaintiff, resulted in numbness and parasthesia. When Dr. Dispo examined the MRI report from March 2003, he stated that it showed a small central to left extrusion at the L5-S1 level with left neural foramina encroachment. (T. 117). Dr. Dispo prescribed cortisone injections and gave plaintiff pain Lorcet for the severe pain. (T. 117).

The record contains several notes on "Return to Work" forms, dated in October, November, and December of 2002, from the North Country Medical Group, stating that plaintiff was totally disabled *for specific periods* of 16 days, 30 days, and 10 days (T. 114-16). The record also contains a "supplementary" report dated March 3, 2003, stating that plaintiff was not able to work "at the present time." (T. 129). This form appears to be stamped with Dr. Dispo's signature since his other reports simply contain his initials and do not appear to spell out his entire last name. (*Compare* T. 117, 220, 221 *with* 129).

## DISCUSSION

**1.  Disability Standard**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ....\" 42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that [she] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; ... .  Assuming the claimant does not have listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [she] has the residual functional capacity to perform [her] past work.  Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir. 1984).

## 2. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co.*

*v. NLRB*, 197 U.S. 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

### 3.     2005 Remand Order

In this case, the Appeals Council Remand Order dated September 8, 2005 (T. 183-84) directed the ALJ to do several specific things, including consider Dr. Dispo's opinion under 20 C.F.R. § 404.1527(d); re-contact Dr. Dispo for clarification if "necessary;" and if appropriate, further develop the record to consider whether plaintiff has a severe mental impairment. (T. 183-84).

#### A.  Treating Physician Rule

A treating physician's opinion is given "controlling weight" when it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999).  The ALJ may decline to give the treating physician's opinion controlling weight if the

treating physician's opinion is inconsistent with other substantial evidence in the record, such as other medical opinions. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

The regulations provide that if the treating physician's opinion is not given "controlling weight," the ALJ will apply certain listed factors in determining how much weight the treating physician's opinion will be afforded. 20 C.F.R. § 404.1527 (d)(2)(citing factors contained in § 404.1527(d)(2)(i), (ii) & (d)(3)-(d)(6)). These factors include: "(1) length of the treatment and frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors." 20 C.F.R. § 404.1527(d)(2)-(d)(6). After considering these factors, the regulations specifically require that the ALJ "always give good reasons" for the weight he ultimately affords the treating physician's opinion. *Id.* § 404.1527(d)(2)(i).

In this case, the record contains a March 2003 report by Dr. Dispo, entitled "Supplementary Report of Claim-Statutory Disability Benefits." (T. 129). This report is a form for reporting plaintiff's condition to an insurance company. The report states that the plaintiff was ***unable to work*** due to left sacroiliac dysfunction; left low back pain, secondary to a mechanical problem, and L3-L4 and L4-L-5 bulging discs. (T. 129). The Appeals Council remanded for a consideration of Dr. Dispo's opinion because ALJ Brown found that Dr. Dispo's March 2003 opinion was "well supported by the objective medical evidence," was "consistent with all the evidence," and afforded the opinion "controlling weight," but then found that

9

plaintiff was not disabled. (T. 183-84). The Appeals Counsel determined that ALJ Brown's ultimate finding was not consistent with his analysis of Dr. Dispo's opinion. (T. 184).

On remand, ALJ Zolezzi reviewed the medical evidence, including updated reports from Dr. Dispo. ALJ Zolezzi found that many of the nerve conduction tests did not show "electrical evidence of left-sided lumbar radiculopathy or peripheral polyneuropathies, and that neurological examinations did not show any significant deterioration or any long track signs." (T. 173). However, in declining to give controlling weight to Dr. Dispo's opinion, the ALJ states that Dr. Dispo's findings were limited to "spasms" and "pain with range of motion in the lumbar spine, which is subjective in nature." (T. 174). The ALJ then concluded that he was not giving Dr. Dispo's reports "controlling weight" because there were "no objective findings to support the subjective pain reported by Dr. Dispo." *Id.*

Although the ALJ's first sentence is unclear, and "pain" is subjective, the court would point out that according to the regulations, "spasms" are considered ***objective evidence***. 20 C.F.R. § 404.1529 (c)(2). *See Vitale v. Apfel*, 49 F. Supp. 2d 137, 143-44 (E.D.N.Y 1999). A review of Dr. Dispo's reports, including those obtained after the remand shows that he often found "palpable spasms" when examining plaintiff. (T. 220, 224, 228). Thus, the ALJ's finding that he was not giving Dr. Dispo's reports controlling weight because there was no "objective evidence" supporting the finding of pain is clearly incorrect and not supported by substantial evidence.

The ALJ then cites to Dr. Dispo's report, dated January 20, 2005, in which Dr.

10

Dispo discusses plaintiff's November 2004 MRI. (T. 174). The ALJ mentions the report in which Dr. Dispo stated that the 2004 MRI showed a "persistent L5-S1 central to left disc protrusion extending to the left lateral recess as compared to her MRI of February 26, 2003 where there was no progression." (T. 174 citing T. 224). The ALJ then states that although Dr. Dispo refers to this disc protrusion, "he fails to mention if the MRI findings refer to the encroachment as mild." (T. 174).  The ALJ then decides that this failure by Dr. Dispo means that "the findings remain the same as the prior MRI." (T. 174).

The court notes that the MRI report itself does *not* appear to be in the record, and it also appears that the ALJ has taken it upon himself to assume that Dr. Dispo's failure to make a particular comment indicates that the MRI was unchanged, while Dr. Dispo appears to state in his January 20, 2005 report that plaintiff's condition may have gotten worse. (T. 224). The ALJ has thus analyzed an MRI that he has not seen and would not have the medical experience to interpret in any event.  The law is clear that the ALJ may *not* substitute his own judgment for that of competent medical opinion. *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).

Since the ALJ was not affording Dr. Dispo's reports controlling weight, the ALJ was required to determine what weight to afford Dr. Dispo's opinion based on the factors outlined in sections 404.1527(d)(2) through (d)(6).  However, instead of properly analyzing these factors, the ALJ supported his failure to give controlling weight to Dr. Dispo by relying upon one statement by plaintiff's Physician's Assistant Howard Ritz, who commented on January 6, *2003* that plaintiff's reported

pain was inconsistent with her physical examination findings. (T. 174 citing T. 89). In the decision, the ALJ recognizes that a Physician's Assistant is *not* an acceptable medical source, but then proceeds to give that source "some" weight, and apparently more weight than that given to the treating physician, because PA Ritz "treated [plaintiff]"[1] and his report was "consistent with all the evidence in the record." (T. 174).

The court notes, however, that in the same report, PA Ritz states that he is referring plaintiff back to Dr. Dispo for evaluation. (T. 89). In fact, it appears that plaintiff stopped seeing PA Ritz when he referred plaintiff to Dr. Dispo. (T. 260). Plaintiff testified that Dr. Dispo cared for her *after* PA Ritz. *Id.* Although the ALJ did obtain updated reports from Dr. Dispo, the ALJ has still failed to properly analyze those reports and has made clear legal and factual errors in his analysis of the content of the reports and in the analysis of Dr. Dispo's assessment of plaintiff's pain. Thus, the ALJ's decision is not supported by substantial evidence.

**4.     Credibility**

It is the function of the ALJ to resolve evidentiary conflicts and to evaluate the credibility of witnesses, including the plaintiff. *Valerio v. Comm'r of Social Security*, No. 08-CV-4253, 2009 U.S. Dist. LEXIS 68634, *54 (E.D.N.Y. Aug. 6, 2009) (quoting *Aponte v. Secretary of HHS*, 728 F.2d 588, 591 (2d Cir. 1984)). Credibility of a plaintiff's subjective complaints must be assessed according to factors in the regulations. 20 C.F.R. § 404.1529(c)(3). These factors include

---

[1] The fact that PA Ritz "treated" plaintiff cannot be used to weigh his opinion more heavily than the opinion of plaintiff's treating physician since Dr. Dispo "treated" plaintiff also.

plaintiff's daily activities; the location, duration, frequency and intensity of the pain; the type, dosage, and side effects of any medication taken for the pain; any other treatment that plaintiff has undergone for the pain; and any measures that plaintiff uses or has used to alleviate the pain or other symptoms alleged. *Id.*

Although ALJ Zolezzi's decision mentions plaintiff's testimony that she cannot do many activities,[2] the ALJ never ***analyzes*** the factors listed in the regulation or states why he does not believe the plaintiff's testimony.  The ALJ mentions the fact that plaintiff takes Hydrocodone daily, but never discusses any of the alleged side-effects of plaintiff's medication.  During the testimony, the ALJ asked plaintiff if the medications had any side-effects, and never followed up on plaintiff's answer that they made her cranky, constipated, and sleepy.[3] (T. 267).  In his decision, the ***only*** basis upon which the ALJ appears to reject plaintiff's testimony is the alleged lack of "objective findings" supporting Dr. Dispo's report of "subjective pain."  As stated above, this finding by the ALJ is not supported by substantial evidence, and thus, the ALJ's credibility finding suffers from the same deficiency.

5.   **Mental Impairment**

The Appeals Counsel specifically stated that the ALJ should "if appropriate" develop the record regarding whether plaintiff has a severe mental impairment. Plaintiff's medical records show continuing depression and anxiety for which she

---

[2] (T. 174).

[3] The record does contain a statement by plaintiff that the Hydrocodone and the Zoloft did not have side effects (T. 242), and another contradictory statement that those medications did make her drowsy (T. 267).  However, there is no analysis by the ALJ regarding this potential conflict in the record.

received the medication Zoloft in various doses as prescribed by Dr. Racine or other individuals in the North Country Medical Group. (T. 229-45). Plaintiff also testified that although she was not seeing a psychiatrist or psychologist, a nurse practitioner was treating her for her depression and anxiety. (T. 262). Anxiety and depression were mentioned in medical reports dated in 2001 and 2002. (T. 96-98).

Plaintiff had stopped taking Wellbutrin at some point, however, she began taking the Wellbutrin again in May of 2003 when the Zoloft alone "was not cutting it." (T. 91). When plaintiff complained during 2005 about persistent confusion, a physician ordered a CAT scan of her brain, which was reported as normal. (T. 231). Plaintiff's testimony in 2004 clearly refers to depression and "panic attacks." (T. 163). Plaintiff's testimony is replete with references to depression (T. 264, 267, 281) and the absence of normal social activities. (T. 275, 277, 281).

Although the ALJ mentions briefly in his recitation of the facts that plaintiff testified that her prescription for Zoloft had been increased and that she testified that she suffered from depression and anxiety, the ALJ never included any discussion of plaintiff's alleged mental impairment in his analysis. The court can only assume that the ALJ rejected plaintiff's claims because she was not "undergoing treatment with a therapist or counselor," or because, according to the ALJ, plaintiff testified that "her medications help the depression." (T. 173). However, this brief mention does not appear to fulfill the Appeals Council's direction to develop the record "if necessary" regarding the existence of a mental impairment or how plaintiff's depression and anxiety might affect her ability to perform work. Thus, the case must be remanded

for a proper evaluation.

## 6. **Residual Functional Capacity (RFC) and Obesity**

Plaintiff also argues that her obesity is a disabling impairment. There is no proof whatsoever in the record to support that assertion other than the fact that plaintiff weighed over 200 pounds. As of October 25, 1999, obesity is no longer an impairment listed under the regulations. *See* Social Security Ruling 02-1p, 2002 SSR LEXIS 1; 20 C.F.R. Part 404, Subpart P, Appendix 1. However, the ALJ is required to consider the effects of obesity in combination with other impairments throughout the five-step evaluation process, taking into account the claimant's RFC assessment. *Id.*

Step four of the five-step disability evaluation requires that the ALJ determine whether plaintiff has the RFC to return to her previous employment. 20 C.F.R. § 404.1520(a)(4)(iv). RFC is the plaintiff's maximum remaining ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. *See Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)(quoting SSR 96-8p, 1996 SSR LEXIS 5). In assessing a plaintiff's RFC, the ALJ must consider the limitations and restrictions caused by all plaintiff's impairments, even those impairments that may not be severe. SSR 96-8p, 1996 SSR LEXIS 5, *14-15 (SSA July 2, 1996).

In this case, the ALJ never mentioned plaintiff's obesity, never mentioned plaintiff's mental impairments, and simply found that plaintiff could return to her past light work as a computer operator. In making this determination, the ALJ found that plaintiff described her past work in a "work report," and from this description,

the ALJ concluded that "[i]t appears that she could stand, walk, sit . . . at will and could change positions based on the number of hours she did in each position." (T. 174). However, a review of plaintiff's "work report" does not support this finding. (T. 73). The work report states that plaintiff's computer operator work required her to sit, stand, and walk, each a total of four hours per day, but there is no indication of whether she could change positions when needed.

At the second hearing, plaintiff's testimony regarding her computer operator work was very brief, and ALJ Zolezzi never asked plaintiff about how long she had to sit, stand, or walk or whether she could alternate those positions.[4] Plaintiff did, however, testify at the second hearing that she could not even sit for thirty minutes without pain. (T. 269). The court notes that plaintiff also testified that her work as a computer operator required her to carry big boxes of paper and "take care of the equipment." (T.256-58). Sometimes, she had to carry the paper across the parking lot. (T. 258). The ALJ cannot rely upon an assumption that plaintiff could alternate positions at will. Since the ALJ in this case did not properly analyze either the treating physician's opinion and plaintiff's complaints of pain, it follows that the ALJ did not properly determine plaintiff's RFC.

The court is also well-aware that past relevant work includes the plaintiff's occupation as she performed it or as the work is performed generally in the national economy. *Speruggia v. Astrue*, No. 05-CV-3532, 2008 U.S. Dist. LEXIS 24561, *37

---

[4] ALJ Brown never asked plaintiff any details about her job as a computer operator. (T. 155). In 2004, plaintiff only mentioned that she was a "computer operator at a customer [sic] brokerage." *Id.*

(E.D.N.Y March 26, 2008)(citing SSR 82-62, 1982 SSR LEXIS 27, *6 (SSA 1982)). The ALJ must make an inquiry into the specific physical and mental demands of plaintiff's previous work. *Id.* (citations omitted). In this case, plaintiff's light work as a "computer operator" was performed at the latest in 1993. (T. 71, 73). Plaintiff's work included "fixing" computer equipment that was broken. *Id.* In addition to glossing over the physical demands of plaintiff's previous work, the ALJ never assessed whether plaintiff could meet the ***mental*** demands of plaintiff's previous work as a computer operator. At the hearing, plaintiff testified that she rarely used the computer at home, and that her daughter would look things up for her. (T. 274). It is unclear whether plaintiff would be able to fix computers, when the last time that plaintiff worked with computers was in 1993. Thus, the ALJ erred in his determination of plaintiff's RFC.

## 7.    **Remand or Reversal**

When the record provides persuasive proof of disability and a remand for further administrative proceedings would serve no purpose, the court may reverse the Commissioner's determination and remand solely for calculation of benefits. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). However, when there are gaps in the record, or the ALJ has applied an improper legal standard, the court should remand to the Commissioner for a proper evaluation. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

In this case, the court is concerned that plaintiff has waited a long time for her proper determination, however, the ALJ erred in determining that plaintiff could

17

perform her prior light work occupation at step four of the five step evaluation. There is also inconsistent evidence that must be resolved. Even assuming that plaintiff could not perform her prior work, there has never been an evaluation of whether plaintiff could perform alternate work in the national economy. The Commissioner may attempt to obtain this determination by the use of a vocational expert if necessary. Based on the evidence in this record, this court cannot make the final determination, and it is necessary to remand this action for further consideration.

**WHEREFORE**, based on the findings above, it is hereby

**ORDERED**, that the decision of the Commissioner is **REVERSED** and that this case is **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with the above opinion. The remand proceedings should take place *on an expedited basis*, not more than 120 days from the date of this decision.

Date: September 8, 2009

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge